Good morning, Your Honors. My name is Kevin Murch. I represent the suitors along with my wife, Marie Murch. I'll be doing the talking today. She watches over me. I had a stroke, and so I'll be the only one talking unless I fall down, and then she'll promptly get up and take care of me. This case involves a family matter, a malpractice case, essentially. And what had occurred is that the suitors had a daughter that had some problems, social problems. She was hospitalized. When she was hospitalized, the problems became much worse. She suffered literally sexual misconduct within the hospital. There was no dispute that that had occurred. In fact, there were other cases following that case once that was determined that that had occurred. The suitors, not being sophisticated in bankruptcy and having a number of problems, financial problems, they were forced into bankruptcy. And once in bankruptcy, they lost their case, essentially. Well, actually, getting to, I think you only have eight or so minutes, and I have a couple of questions I wanted to get to. Talk to me about the stay and why a stay wasn't obtained, and is that fatal? The stay was, there was an attempt to obtain a stay on a number of occasions, at least on two occasions. Well, I'm familiar that you asked for an oral stay, and then you actually put one in writing. Yes. That's my understanding. And it was denied. It was denied because there was, the suitors went into a bankruptcy court. There was a deal reached where if the suitors put up $10,000, which they borrowed from their parents, that they would be allowed to proceed in the case. They put up the money. Buying the case, buying the claim, isn't that right? Wasn't that what they offered to do with the $10,000? It could be referred to as buying the claim. Mm-hmm. And their intent was just to keep the case going. They're not sophisticated enough to know that whether or not buying a claim would be proper or not proper. What happened to the daughter's claim? The daughter, what had happened approximately three years earlier. I understand that. I'm saying at the time, according to your brief, you tell us that the Nevada Supreme Court dismissed the appeal as it relates to Mr. and Mrs. Souter, but not their daughter. Did the daughter have a separate claim pending before the Nevada Supreme Court at that time? She had a claim that was dismissed through an interpreted settlement. It was interpreted that she had settled, and what had actually happened is there was no settlement. She went to go pick her check up, and there was some individuals that said that they were entitled to the money. They took the money, and the Souters, Ms. Souter, got nothing. So the Nevada Supreme Court never adjudicated the appeal from the malpractice lawsuit? No. And that's what we're here for today, is to try to beg you, to allow us to just to give these people the opportunity to adjudicate what's an important social issue, as well as a family issue, a belief in the system type of issue. Well, now, if we were to rule in your favor, what would you do? Then proceed with a special writ to the Supreme Court of Nevada? We would go, and I smile because my wife asked me that question. We would go to Judge Reed, and we would seek relief first from Judge Reed, and if we obtained that relief, we would then go to the Nevada Supreme Court, is the method, and hope to obtain, at that point in time, the relief necessary in order to adjudicate the case. Does the State or does the Supreme Court have an established procedure that you can follow? Would it be an extraordinary writ just to kind of catch all power, or is there something you can do to something else you can think of that you can file that would catch the Court's attention? Having done it 25 years, which is not that long, but long enough, the Court has, on a number of occasions, done extraordinary, allowed extraordinary writs in situations with unusual facts, such as these facts, where there just has been a mistake. So I believe that they would allow it to be heard. There was a case, in fact, directly related to this case called Clark v. Hospital Corporation of America, and Dr. Clark actually, through the help of Mrs. Souter, had discovered a number of the problems and of these problems and adjudicated it. It went through the system up to the they went up and down two or three times, finally ended up in the Nevada Supreme Court, and before trial it was settled and adjudicated in that fashion. Now, there are other things you'd have to deal with before, as you say, you'd have to go back to Judge Reed. What do you contemplate? In effect, I guess you'd have to ask to begin with, for the option for this claim to be reopened, is your client prepared to bid more money, or are you going to object to the option procedure altogether? What's the plan of attack at that point? Yes. And in fact, my client had offered more money and was not allowed to bid, because of some procedure that I don't understand, not being an expert in that field. But my clients had gone to parents, their parents had obtained this $10,000, were willing to put up more money to keep the litigation going, and would be, and have assured me that they would continue to adjudicate this case. And they do have the help of counsel doing this on a basis that's very inexpensive. Would you like to reserve your remaining time for rebuttal, or is that what you want to say now? I would, if I could reserve it. And thank you for your time. I appreciate it. We'll hear from counsel for the Appellees. Judge Fletcher, Judge Clifton, and Judge Shea, may it please the Court, my name is Bruce Feasley. I represent the Appellees in this case. I'd like to comment first, if I could, on a couple of things that Mr. Murch said. I have reviewed the record yesterday, and there is nothing in the record before this Court that indicates that the suitors tried to make an additional bid and that that was precluded for some reason. Further, my recollection of that hearing, which I attended, is that is not the case. This case is about whether Judge Reed was in error when he determined that this matter was moot. It is not about the underlying malpractice case. It is not about the personal injury case that underlies the malpractice case. It's not about whether the suitor's daughter got money or not. It is about whether Judge Reed determined properly that this case was moot when the Supreme Court dismissed the case. Well, I guess the issue is whether there's any remedy still available to these parties. Isn't that right? I think that's correct, Your Honor. There certainly any Supreme Court can determine its own jurisdiction and can determine under some extraordinary writ that it wants to hear something, but there's no mechanism in the Nevada Supreme Court that would deal with an issue such as this that I'm aware of. They were not a party before the Supreme Court when this case was dismissed. Is that right? No, they weren't. It was Angie Clark who was the trustee in the case under Section 541 and applicable case authority. The malpractice case became an asset of the estate when the bankruptcy estate was filed, even though it was not listed by the suitors. Am I wrong that the Nevada Supreme Court has used the extraordinary writ in circumstances where the individual wasn't a party before the court? Not that I can recall. I could not say yea or nay, Your Honor. I just don't know. Well, that's a kind of critical issue, I believe. Well, I'm sorry. That was not raised in the appellee's briefs that I saw, but I am not aware of any ñ I'm not aware of any Nevada case where the court has said we are going to reopen a case or we're going to give extraordinary relief because the party complaining was not a party to the appeal. I'm not saying that there wasn't ñ there isn't such a case. I just don't know. You know, this case is kind of distasteful to me, to have a law firm that's accused of malpractice to kind of come in the back door and buy up a claim from an estate where the individuals are in distress. Does this go on in Nevada much? It is certainly not unheard of for people to buy claims in litigation to get rid of other claims. I have been aware of a number of cases where that has happened in state court, where there's someone who's at a judgment, a party who's involved in other litigation unrelated to the first one, buys the judgment and uses that to negotiate the claim. That may, in fact, be what Mr. Murch was referring to. There were some physicians who had a couple hundred thousand dollar claim against the suitors, and they may have executed that against the daughter. I'm not sure, but that may be what they're talking about. It is not unheard of in bankruptcy court for someone to come in when a Chapter 7 has been filed and attempt to settle a claim that is made against them. That's not at all unusual. And that's what happened here with respect to my clients. There was a malpractice claim that had been dismissed by the state court on the statute of limitations. A motion for rehearing was entered. That had been denied by the state court. It was appealed. The suitors then chose to file bankruptcy. They did not list the malpractice case, but not listing the malpractice case doesn't have any effect on that. It becomes property of the estate under Section 541 automatically and belongs to the trustee. The trustee then, Your Honor, has the obligation to maximize the value of the estate for the benefit of the creditors of that estate, and that is what she did. She received an offer for $10,000 from the suitors. She noticed that up for a hearing. Settlements in bankruptcy court always have to be approved by the court, and they are almost always subject to overbid by an appropriate party. My clients came in, overbid the amount the suitors were willing to pay. The judge went through the proper analysis under ANC Properties, Wolfson and Mickey Thompson, and determined that the settlement that the trustee wanted to enter into was in the best interest of the estate and accepted that settlement. Now, when the award to the daughter was made, you took it for attorney's fees. Is that what happened? No, no. I was not at all involved in that. I did not represent the physicians. Well, did that law firm take it from the land for attorney's fees? What happened? Why didn't she get any money? I don't have any idea, and I don't believe it involved my clients. My understanding, which is not perfect, certainly, is that there was a malpractice case, or I don't know, there was a tort case filed against Hospital Corporation of America for mistreatment of the suitor's daughter that was settled before it went to trial. Mr. and Mrs. Souter went to trial and lost, and there was a counterclaim for attorney's fees, and the court determined that the physicians who had been sued were entitled to attorney's fees, and the court ordered a couple hundred thousand dollars of attorney's fees in favor of those physicians. But if, in fact, that was the mechanism by which the suitor's daughter received no money, that did not involve my clients. That was third parties to this appeal and third parties to this transaction. I would hope. Kennedy. To get to the mootness issue for a second, because that's what caused the dismissal in the district court, I guess what concerns me here is mootness basically says, look, it's too late, nothing can be done, the train has left the station. And yet, the Nevada Supreme Court appears to have a procedure for extraordinary writs that we're not in any position to say whether the court would grant such a writ, but if they would, then maybe the train hasn't left the station. Can we really say that the case is moot if that possibility hasn't been explored? I think you can. There was never the argument that there was some sort of available remedy to the Supreme Court at the Supreme Court argued to Judge Reed in response to the motion to dismiss. I'm not aware of anything other than a general common law power of a Supreme Court to hear pretty much whatever they want. I do not believe there is a statutory mechanism which would allow a statutory or a case law mechanism which would allow the suitors to get back in front of the Supreme Court on the appeal. I just don't. The Nevada Rule of Appellate Procedure 21 allows for extraordinary writs. That would do it. But that's a general common law. That's what I refer to as a general common law writ. Nothing that deals specifically with this situation. But the power exists. Apparently, the power exists. And you have the burden of proving mootness, correct? I do not. I had the burden of proving mootness before. I do not believe I have the burden of proving mootness here. Well, either mootness applies or it doesn't. And I gather that you're advocating that it does and that the district court was correct in the remarks he made. That's correct. Indicating that he had no power and there was nothing existing. And essentially, you cited Rule 41, which dealt with parties, and these are nonparties. Correct. I don't believe that the appellants here satisfy any of the traditional exceptions to mootness, if you're interested in that. I don't think this is a case that is capable of repetition and avoids review. I don't think it is a case that has a tremendous public policy effect. Whether or not a personal injury case is property of the State has been determined, but that's something that ought to be left to the legislatures or the Congress to determine. And this is not a case that has collateral consequences, as far as I can tell. The suitors are not likely to be deported. The suitors are not likely to be jailed. I don't think losing a case constitutes collateral legal consequences. If there are no other questions, I will conclude my presentation. Thank you. Thank you for the argument. Rebuttal. Yes, you've got, I think, about two and a half minutes left. If you don't use all of it, that's fine by me, but you're entitled. The very last thing, I'd like to start at the back and go forward because I remember better that way. There are collateral issues here. The greatest collateral issues that exist, the social issues that exist here. Nevada does have procedures, has done this, and has done it in situations where public policy is at issue. Public policy in this case is a very important thing when a child is literally raped in a hospital. And there's money, but money is not the most important thing by any means. The most important thing in this case is to allow parents to at least to be able to adjudicate a case that should be adjudicated. If there's any case that should be, it is this case. Their daughter was horribly treated, and now counsel would have it be just another case and another case that they did well in and much better than my side of the fence. And I literally would beg you to allow the system to do its job. I know the Ninth Circuit does that. I've been here a few times, and I appreciate just being able to do this again. And thank you very much. Thank you. We thank both counsel for their argument. The case just argued is submitted. The next case on the calendar this morning is Dent v. Cox Communication.
judges: B. Fletcher, Clifton, Shea